## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| R.M.M., a minor child, by and through her Mother and Natural Guardian, T.M., | Civ. No. 15-1627 (SRN/HB) |
| Plaintiffs, | **MEMORANDUM OPINION AND ORDER** |
| v. | |
| Minneapolis Public Schools, Special School District No. 1; and Minneapolis School Board, | |
| Defendant. | |

_____

| | |
|---|---|
| Special School District No. 1, Minneapolis Public Schools, | Civ. No. 15-cv-1855 (SRN/HB) |
| Plaintiff, | |
| v. | |
| R.M.M., by and through her Parents, O.M. and T.M., | |
| Defendants | |

_____

| | |
|---|---|
| Special School District No. 1, Minneapolis Public Schools, | Civ. No. 16-cv-3085 (SRN/HB) |
| Plaintiff, | |
| v. | |
| R.M.M., by and through her Parents, O.M. and T.M., | |
| Defendants | |

Amy J. Goetz & Andrea L. Jepsen, School Law Center, LLC, 452 Selby Avenue, Suite 2E, St. Paul, Minnesota 55102, for R.M.M., by and through her Parents, O.M. and T.M.

Laura Tubbs Booth, Booth Law Group, LLC, 10520 Wayzata Boulevard, Suite 200, Minnetonka, Minnesota 55305, for Minneapolis Public Schools, Special School District No. 1, and Minneapolis School Board.

_____

SUSAN RICHARD NELSON, United States District Court Judge

This matter is before the Court on the Motion for Attorney Fees and Costs filed by R.M.M. [Doc. No. 107].  For the reasons set forth herein, the motion is granted in part and denied in part.

## I.    BACKGROUND

### A.    Factual Background

This Court's June 27, 2017 Order [Doc. No. 105] provides a detailed explanation of the underlying facts and issues in these lawsuits.  See R.M.M. by and through T.M. v. Minneapolis Pub. Schs., Nos. 15-cv-1627 (SRN/HB) & 16-cv-3085 (SRN/HB), 2017 WL 2787606 (D. Minn. June 27, 2017).   In brief, R.M.M. is a minor student, who was voluntarily enrolled  at Annunciation Catholic School ("ACS"), a private school in Minneapolis.  Id. at *2.  In 2014, her mother filed an administrative complaint with the Minnesota Department of Education on her behalf, alleging that the Minneapolis School District ("the School District") had violated its location, identification, and evaluation ("child-find") obligations under the Individuals with Disabilities Education Improvement Act ("IDEA"), 20 U.S.C. § 1400, et seq., as well as Section 504 of the Rehabilitation Act

2

of 1973 ("Section 504"), and had denied R.M.M. a free appropriate public education

("FAPE") while she attended the private school.    R.M.M., 2017 WL 2787606, at *2.

    The Administrative Law Judge ("ALJ") dismissed as moot the child-find claim,

held a due process hearing on the FAPE claim, and ruled that the School District had

denied R.M.M. a FAPE starting in January 2014. Id. He required the School District to

provide or pay for additional instruction for R.M.M. in reading, writing, and mathematics.

Id.

    In 2015, the child's mother, T.M., and the School District respectively initiated two

lawsuits in this Court.[1] Id. R.M.M. sought review of the dismissal of the child-find and

pre-January 2014 FAPE claims, and further asserted discrimination claims under the

Americans with Disabilities Act ("ADA") and Section 504. Id. The School District

appealed the ALJ's decision on the FAPE claims, arguing that the ALJ lacked jurisdiction

over them, and had erroneously awarded relief. Id. Following the parties' cross motions

to dismiss, this Court concluded that R.M.M.'s parents were entitled to a due process

hearing on their child-find and FAPE claims, and, under Minnesota state law, R.M.M. had

an individual right to a FAPE commensurate with her public school peers. See R.M.M. v.

Minneapolis Pub. Schs., Nos. 15-cv-1627 (SRN/HB) & 15-cv-1855 (SRN/HB), 2016 WL

475171, at *16 (D. Minn. Feb. 8, 2016). The Court reinstated the child-find claim and

---

   [1] Because R.M.M.'s suit was filed first, the Court refers to her and her parents as "Plaintiffs," and the School District as "Defendants," in the Court's citations to the parties' memoranda. The School District initiated a third lawsuit in 2016.

remanded the matter to the ALJ for adjudication.  Id.

In March 2016, the School District filed an appeal with the Eighth Circuit, limited to the question of whether R.M.M. had an individual right to a FAPE and to a due process hearing on the issue of a FAPE.  See Special Sch. Dist. No. 1 v. R.M.M., 861 F.3d 769, 770 (8th Cir. 2017).  The Eighth Circuit held that Minnesota state law granted R.M.M. the right to a FAPE and that under both federal and state law, R.M.M.'s parents had a right to a due process hearing to dispute the provision of a FAPE.  Id. at 774–78.

In May 2016, the ALJ held a due process hearing on the remanded child-find claim. (See ALJ's July 1, 2016 Order at 2, Ex. C to Goetz Aff. [Doc. No. 111].)  He found that the School District had failed to provide a FAPE, (see id. at 17), and awarded compensatory education and retroactive reimbursement for the costs of an assessment, and $21,145 for tuition and related services for the 2015–16 school year at a private school, as well as tuition through the 2017–18 school year.  (Id. at 19–20.)

R.M.M. and her parents filed the instant motion for attorneys' fees and costs based on the attorneys' fees provision of the IDEA, 20 U.S.C. § 1415(i)(3).  (Pls.' Mot. at 1–2.) They contend that they prevailed in these matters, citing the judgments entered in this Court on June 28, 2017 in Case Number 15-1627 [Doc. No. 106], and in Case Number 16-3085 [Doc. No. 35], and in the Eighth Circuit's June 29, 2017 judgment in Appellate Case Number 16-1601.  They seek to recover attorneys' fees totaling $312,283.78, costs and filing fees totaling $400, plus pre- and post-judgment interest.  (Pls.' Mem. Supp. for Attys.' Fees ("Pls.' Mem.") at 22–23 [Doc. No. 110].)

The School District opposes this motion. It divides the underlying procedural history into two separate administrative actions, arguing that Plaintiffs did not "prevail" under federal law–under which attorneys' fees are recoverable–in the "first action." (Defs.' Opp'n Mem. at 2 [Doc. No. 113].) It contends that Plaintiffs are not entitled to any fees and costs for work performed in the "first action," because relief was afforded only under state law, and state law does not provide for attorneys' fees. (Id. at 1–7.) As to the remanded "second action" on Plaintiffs' child-find claim, the School District concedes that Plaintiffs are entitled to some fees. (See id. at 7.) However, the School District seeks a reduction from the requested amount, arguing that R.M.M. did not prevail on all of her claims, and the fees were excessive, redundant, or should otherwise be excluded. (See id. at 7–21.)

## II.    DISCUSSION

### A.    Prevailing Party

The IDEA provides for the discretionary award of reasonable attorneys' fees " to a prevailing party who is the parent of a child with a disability." 20 U.S.C. § 1415(i)(3)(B). The Eighth Circuit has observed that to be a "prevailing party" for purposes of IDEA attorneys' fees, a litigant must obtain "'actual relief on the merits of his claim that materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff.'" Neosho R-V Sch. Dist. v. Clark, 315 F.3d 1022, 1030 (8th Cir. 2003) (quoting Birmingham v. Omaha Sch. Dist., 298 F.3d 731, 734 (8th Cir. 2002); Farrar v. Hobby, 506 U.S. 103, 111-12 (1992)).

5

Accordingly, in <u>Neosho</u>, the Eighth Circuit found that the student was a prevailing party, because the administrative panel altered the legal relationship between the parties by granting the student a right to a behavior management plan that the school district had previously denied. 315 F.3d at 1030. Similarly, in <u>Birmingham</u>, the court found that the student was a prevailing party where she was awarded compensatory education to remedy a right that her school had previously denied her. 220 F.3d at 857.

Here, however, the School District argues that R.M.M. was not a prevailing party for purposes of her initial administrative action because she prevailed on her FAPE claim only under state law, and Minnesota law does not provide for an award of attorneys' fees.

It is true that both this Court and the Eighth Circuit found that R.M.M., as a parentally-placed private school student, had no individual, substantive right to a FAPE under federal law. See <u>R.M.M.</u>, 2016 WL 475171, at *7; <u>Special Sch. Dist. No. 1</u>, 861 F.3d at 777. The Eighth Circuit has analogized the IDEA's fee-shifting provisions to similar provisions under 42 U.S.C. § 1988, noting that "other circuits 'have uniformly held that a plaintiff who loses on the merits of its federal civil rights claim is not a "prevailing party" for purposes of an award of attorneys' fees under 42 U.S.C. § 1988, even if it prevails on a related pendent state law claim.'" <u>Warner v. Indep. Sch. Dist. No. 625</u>, 134 F.3d 1333, 1337 (8th Cir. 1998) (quoting <u>Nat'l Org. for Women v. Operation Rescue</u>, 37 F.3d 646, 653–54 (D.C. Cir. 1994)). Exceptions exist under § 1988 jurisprudence for cases in which relief is granted on a pendent non-federal claim in order to avoid reaching a federal constitutional claim, see <u>id.</u> (citing <u>Reel v. Ark. Dep't of Corr.</u>, 672 F.2d 693,

697–98 (8th Cir. 1982), or where, under a "catalyst theory," the defendant provides a remedy in order to avoid litigating a federal claim.  Id.  Neither exception applies here, as no constitutional claims were at issue, this Court and the Eighth Circuit addressed the federal statute, see R.M.M., 2016 WL 475171, at *7; Special Sch. Dist. No. 1, 861 F.3d at 777, and the School District did not provide a remedy to avoid litigating a federal claim. Thus, the Court agrees with the School District that federal law did not afford substantive relief to R.M.M. on her FAPE claim.  And while she prevailed under state law, state law does not provide for attorneys' fees.   As the Eighth Circuit observed in Warner, "Minnesota could have authorized an award of attorneys' fees under state law, but it has not done so." 134 F.3d at 1337.

However, R.M.M. also sought procedural relief under the IDEA as to any FAPE claims arising from kindergarten through January 2014.  (See Compl. at p. 40, ¶ 2 [Doc. No. 1].)  She requested remand, followed by a due process hearing to address these claims. (See id.)  While the ALJ denied a hearing on any pre-January 2014 FAPE claims, this Court found that federal law gives a parentally-placed private school student the procedural right to such a hearing concerning the provision of a FAPE, and remanded the matter to the ALJ, see R.M.M., 2016 WL 475171, at *7–9,—a ruling that the Eighth Circuit affirmed.  See Special Sch. Dist. No. 1, 861 F.3d at 778.

The Third Circuit recently considered the question of whether an award of procedural relief confers prevailing party status, finding that "if a parent vindicates a procedural right guaranteed by the IDEA, and if the relief she obtains is not 'temporary

forward-looking injunctive relief,' then she is a 'prevailing party' under the IDEA attorneys' fee provision and is eligible for an award of attorneys' fees." <u>H.E. v. Walter D. Palmer Leadership Learning Partners Charter Sch.</u>, 873 F.3d 406, 413 (3d Cir. 2017) (citations omitted).  Here R.M.M. obtained a ruling on the merits of her right to procedural relief—which was not temporary, injunctive relief—when this Court remanded her FAPE claim for a due process hearing before the ALJ.  This relief altered the legal relationship between the parties by affording R.M.M. her due process rights.  Accordingly, R.M.M. is a prevailing party, under federal law, for the portion of her FAPE claim that sought a due process hearing.

The Court has carefully reviewed R.M.M.'s billing entries and attempted to apportion the FAPE-related entries between federal and state law.  Having conducted this review, the Court deducts $2,500 for non-reimbursable portions of her FAPE claim.

The School District does not dispute that R.M.M. prevailed on her remanded child-find claim, (<u>see</u> Defs.' Opp'n Mem. at 7), but argues that the requested fees should be reduced on several grounds.  The Court agrees that R.M.M. prevailed on her child-find claim and therefore qualifies for an award of reasonable attorneys' fees, as determined by the Court, under the IDEA.  However, the Court rejects any argument that R.M.M. is not entitled to fees for work performed on her child-find claim in the first round of proceedings.  While the ALJ initially dismissed her child-find claim, this Court reinstated the claim on appeal, <u>see</u> <u>R.M.M.</u>, 2016 WL 475171, at * 15–17, and, on remand, the ALJ ruled in R.M.M.'s favor, finding that the School District had failed to timely identify,

evaluate, and appropriately serve her prior to January 2014.  (See ALJ July 1, 2016 Order

at 3, Ex. C to Goetz Aff.)

       R.M.M. did not prevail on her claims under the ADA and § 504.  Under other fee-

shifting statutes such as § 1988 and Title VII, when a plaintiff obtains partial success but

his or her claims involve a common core of facts or are based on related legal theories,

courts ask whether the plaintiff failed to prevail on claims that were unrelated to the

successful claim.  See Hensley v. Eckerhart, 461 U.S. 424, 434 (1983); see also Burks v.

Siemens Energy & Automation, Inc., 215 F.3d 880, 882 (8th Cir. 2000) (stating that courts

must identify the prevailing claims and then determine an appropriate amount of

reasonable attorneys' fees, in light of the extent of the plaintiff's success).  It is not entirely

clear if the same analysis applies under the IDEA.  The U.S. Supreme Court observed in

Hensley that

> [i]n some cases a plaintiff may present in one lawsuit distinctly different
> claims for relief that are based on different facts and legal theories.  In such a
> suit, even where the claims are brought against the same defendants—often
> an institution and its officers, as in this case—counsel's work on one claim
> will be unrelated to his work on another claim. Accordingly, work on an
> unsuccessful claim cannot be deemed to have been 'expended in pursuit of
> the ultimate result achieved.'  The congressional intent to limit awards to
> prevailing parties requires that these unrelated claims be treated as if they
> had been raised in separate lawsuits, and therefore no fee may be awarded
> for services on the unsuccessful claim.

461 U.S. at 435 (citation omitted).  The Court finds that R.M.M.'s unsuccessful disability

discrimination claims are not sufficiently related to her successful child-find claim and

FAPE due process claim so as to warrant an award of attorneys' fees.  As the Court noted

in its June 27, 2017 opinion dismissing the discrimination claims, discrimination claims require elements of bad faith or gross misjudgment that were not even alleged here. See R.M.M., 2017 WL 2787606, at *8–9. The Court therefore deducts $2,525 to account for work on R.M.M.'s unsuccessful ADA and § 504 claims.

Likewise, to the extent that work specifically relates to R.M.M.'s former private school/former co-defendant ACS, such fees are not properly recovered from the School District. The Court has carefully reviewed the billing records, as well as the School District's suggested deductions, (see Defs.' Reduction Table, Ex. 2 to Schreifels Aff. [Doc. No. 114]), and reduces the amount of the fee award by $8,075 for work attributable to R.M.M.'s claims against ACS.

### B.    Reasonable Attorneys' Fee

The starting point for the determination of the amount of reasonable attorneys' fees involves calculating the lodestar, which provides an initial estimate of the value of the attorneys' services. Hensley, 461 U.S. at 433. The lodestar is the product of the number of hours reasonably expended on the litigation multiplied by a reasonable hourly billing rate. Id. Under the IDEA, any fee award must be based on "rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished." 20 U.S.C. § 1415(i)(3)(C).

The party seeking a fee award is responsible for providing evidence of hours worked and the rate claimed. Wheeler v. Mo. Highway & Transp. Comm'n, 348 F.3d 744, 754 (8th Cir. 2003). However, the Supreme Court has cautioned that a determination of

attorneys' fees should not spawn "a second major litigation."  Fox v. Vice, 131 S. Ct. 2205, 2216 (2011) (quoting Hensley, 461 U.S. at 437).  Moreover, while the fee applicant must document its fees in order to demonstrate its entitlement to an award,

> trial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time.

Id.

### 1.    Reasonable Hourly Rate

The School District does not generally challenge the hourly billing rate of R.M.M.'s counsel, Ms. Goetz.  (See Defs.' Opp'n Mem. at 8.)  Goetz states that she is one of a handful of private attorneys in Minnesota who specializes in the practice of school and education law, with an emphasis on special education law.  (Goetz Aff. ¶¶ 6, 13; see also Goetz Curriculum Vitae ("CV"), Ex. D to Goetz Aff.)  Her billing rate is $300 per hour.  (Goetz Aff. ¶ 7.)  She has practiced law since 1991, (see Goetz CV at 1–2), and asserts that her hourly rate has remained generally unchanged since 2005 because her student clients are typically unable to pay a higher rate.  (Goetz Aff. ¶ 7.)  Goetz states that while monetary relief under the IDEA is usually modest, she believes that the value of the awards here constitutes the highest relief awarded on any special education claim in Minnesota.  (Id. ¶ 15.)  Further in support of the fee request, Goetz submits her billing records, which reflect work performed by Goetz, fellow attorney Andrea Jepsen, and "clerk[s]."   (See Billing Records, Ex. E to Goetz Aff.)

11

Attorney Daniel J. Stewart, a supervising attorney at the Minnesota Disability Law Center, has also submitted an affidavit in support of the fee petition. As a local practitioner in disability-related litigation, including special education cases, he asserts that Goetz's $300 hourly fee is the prevailing rate for private attorneys in the local community who perform work of this type. (Stewart Aff. ¶ 3 [Doc. No. 112].) Stewart also asserts that Goetz "enjoys a uniformly strong reputation as among the best and most experienced special education attorneys for students and families in Minnesota." (Id. ¶ 9.)

The Court finds that Goetz's $300 hourly billing rate is reasonable. While the School District does not contest Ms. Goetz's hourly rate, it does contest a May 22, 2017 billing entry for work performed on a day when Goetz's legal license was suspended. (Defs.' Opp'n Mem. at 8.) The invoices show $75 that is attributable during a brief time period of Goetz's license suspension. (Id. at n.5.) As the School District notes, during a period of non-licensure, an attorney may not hold out that he or she is licensed to practice law in the applicable jurisdiction. See J.W. ex rel. Tolbert v. Saint Paul Pub. Schs. Indep. Sch. Dist. No. 625, No. 12-1369 (DWF/SRN), 2013 WL 5177471, at *5 (D. Minn. Sept. 13, 2013) (reducing fees by amount of work performed during the period of attorney's license suspension). Accordingly, a reduction of $75 is warranted.

The School District also objects to a fee award that includes reimbursement for work performed by attorney Andrea Jepsen and "clerk[s]," arguing that R.M.M. has failed to meet the burden of production or proof establishing the reasonableness of their respective billing rates. (Defs.' Opp'n Mem. at 8.) Granted, no evidence or affidavits

12

address the background, experience, or reputation of attorney Jepsen.  However, from publicly-available information from the State Board of Law Examiners, the Court notes that Ms. Jepsen has been licensed to practice law in Minnesota since 2006, and, from her firm's website, she practices in the areas of education, housing elder law matters, public benefits, family law disputes, probate and other concerns.  (See School Law Center, LLC, http://www. schoollawcenter.com/Attorneys (last visited Dec. 15, 2017).)  Compared against the $300 hourly rate of her more experienced colleague, and given Ms. Jepsen's years of experience and expertise, the Court finds that Jepsen's $250 hourly rate is reasonable—a determination that is also based on the Court's own knowledge of billing rates in the local legal community.  See Hanig v. Lee, 415 F.3d 822, 825 (8th Cir. 2005) ("district courts may rely on their own experience and knowledge of prevailing market rates.").  Moreover, Jepsen appears to have performed a relatively modest amount of work on these matters, as her entries total approximately $3,562.50.  (See Billing Entries for 7/21/14 ($125), 6/2/15 ($375), 7/13/15 ($1,500), 7/14/15 ($1,562.50), Ex. E to Goetz Aff.)

As to work performed by a clerk or clerks, however, R.M.M. has provided no information, nor is the Court able to glean any information concerning the person or persons who performed this work, which was billed at the rate of $100 per hour.  The School District asserts that the invoices reflect $23,562.50 of clerk time, and questions whether the work was performed by interns or volunteers. (Defs.' Opp'n Mem. at 9, n.6.) The Court agrees that R.M.M. has failed to sufficiently meet her burden of establishing the reasonableness of the billing rate performed by a clerk or clerks.  A reduction of

13

$23,562.50 is taken for this work.

### 2.    Reasonable Work

As discussed above, the IDEA permits a reduction in attorneys' fees for work that exceeds the applicable hourly rate prevailing in the community. 20 U.S.C. § 1415(i)(3)(F)(ii). In addition, the IDEA provides that attorneys' fees may be reduced under the following circumstances: (1) the parent, or parent's attorney, unreasonably protracted the final resolution of the controversy; (2) the time spent and legal services rendered were excessive in light of the action or proceeding; or (3) the attorney representing the parent failed to provide certain information to the local educational agency. Id. § 1415(i)(3)(F)(i)–(ii), (iv). However, none of these provisions are applicable if the court finds that the state or local educational agency unreasonably protracted the final resolution of the action or proceeding. Id. § 1415(i)(3)(G). Here, there is no indication that either party unreasonably protracted the proceedings.

The School District challenges the reasonableness of certain work performed by R.M.M.'s counsel, seeking specific deductions as well as general, percentage-based deductions. In particular, the School District objects to certain billing entries due to: (1) quarter-hour billing and block billing; (2) excessive or redundant entries; and (3) allegedly improper billing for clerical work, travel time, expert fees, and time spent in Individualized Education Program ("IEP") team meetings and resolution sessions. (See Defs.' Opp'n Mem. at 9–19.)

### a.    Quarter-Hour and Block Billing Practices

14

The School District argues that the quarter-hour billing practices of R.M.M.'s counsel overstate the actual amount of the legal work performed, and therefore, billed. (Id. at 10–11.)  It seeks a reduction of 6%, or $18,737.03, from the requested fee amount of $312,283.78.  In a similar vein, the School District argues that counsels' block billing practices make it difficult to assess the reasonableness of attorneys' fees.

The Court is unaware of any Eighth Circuit prohibition against the block billing of attorney time, see Ewald v. Royal Norwegian Embassy, No. 11-CV-2116 (SRN/SER), 2015 WL 1746375, at *8 (D. Minn. April 13, 2015) (citation omitted), but agrees that block billing makes it difficult to determine the amount of time apportioned between R.M.M.'s various claims with precision.  However, the School District's requested reductions appear to approximate good-faith, proportional reductions.  While the School District cites authority for the proposition that quarter-hour billing creates the potential for inflated billing (see Defs.' Opp'n Mem. at 10) (citing Wyker v. Quiles, No. 14-cv-782-pp, 2015 WL 5177970, at *3–4 (E.D. Wisc. Sept. 4, 2015)), the Court is disinclined to make any overall reductions for this billing practice.  Rather, to the extent that the Court agrees with the underlying substantive bases for Defendants' suggested reductions, the Court will make reductions with respect to specific categories of objection (e.g., proposed reductions for clerical work or work performed with respect to claims against ACS).   No percentage-based reduction will be taken for quarter-hour billing practices as a general matter, however.

**b.    Excessive or Redundant Entries**

The IDEA's fee-shifting provision states that a court may reduce the amount of attorneys' fees if it finds that "the time spent and legal services furnished were excessive considering the nature of the action or proceeding." 20 U.S.C. § 1415(i)(3)(F)(iii).

Here, the School District argues that certain legal work was excessive or redundant. It seeks to deduct a total of $134,567.50 from any fee award for such work. (See Defs.' Reduction Table by Category at 1–2, Ex. 3 to Schreifels Aff.) As one example, the School District identifies a total of $70,305 in fees from June 18, 2014 through January 15, 2015 incurred for preparation for the first due process hearing. (See id. at 1.) The Court has reviewed all of the entries to which the School District objects on this basis and declines to make any deductions for excessive work. The work in question related to the administrative hearings, responses to motions to dismiss, motions to reverse and remand, additional briefing, and an appellate brief. All of these matters were important to the case.

However, the School District also seeks a reduction of $150 for duplicate entries for March 16, 2016 and April 21, 2016. This deduction is proper. Accordingly, $150 is deducted for duplicative work.

### c.    Specific Activities

As noted, the School District also seeks a reduction in a fee award for allegedly improper billing related to clerical work, travel time, expert fees, and time spent in IEP team meetings and resolution sessions.

As to clerical work, the School District asserts that R.M.M.'s bills contain numerous entries for clerical work, including filing, scheduling meetings, and organizing

16

documents.  (Defs.' Opp'n Mem. at 18.)  The School District seeks a reduction of at least $12,575 for such work.  The Court agrees that tasks in the billing records include work of a clerical nature, such as filing pleadings, organizing files, and bates-stamping and indexing documents.  (See, e.g., Defs.' Reduction Table by Entry at 1, 4, 8, Ex. 2 to Schreifels Aff.)  Such tasks cannot fairly be accounted for at an attorney's billing rate. See Rosen v. Wentworth, 13 F. Supp. 3d 944, 952–53 (D. Minn. 2014).  However, the Court disagrees with the School District's characterization of other tasks as clerical, particularly tasks that involve counsel communicating with and forwarding information about the case to R.M.M.  (See, e.g., Defs.' Reduction Table by Entry at 1, 3, Ex. 2 to Schreifels Aff.)  Such activities are not strictly clerical and are not deducted from the fee award here.  Based on the Court's careful review, the Court deducts $6,843 for non-compensable clerical work.

As to travel time, the School District asserts that all travel time must be reduced by one half, resulting in a deduction of $1,762.50.  (Defs.' Opp'n Mem. at 18–19) (citing Superior Constr. Servs., Inc. v. Caraway, No. 19-C8-03-6950, 2004 WL 2805699, at * 4 (Benson, Arb.) (stating, "[f]ees for travel time have been awarded only to the extent of 50% of the full billable rate[.]"); Damarcus S. v. Dist. of Columbia, 206 F. Supp. 3d 459, 471 (D.D.C. 2016) ("[I]n this Circuit, travel time is compensated at half of the attorney's rate.")).  But the School District's authority–a Minnesota arbitration decision and the decision of the District Court for the District of Columbia–is not controlling.  Moreover, these cases are contradicted by controlling precedent from the Eighth Circuit, stating that

> [w]e have long recognized a 'presumption. . . that a reasonable attorney's fee
> includes reasonable travel time billed at the same hourly rate as the lawyer'
> normal working time," <u>Craik v. Minn. State Univ. Bd.</u>, 738 F.2d 348, 350
> (8th Cir.1984), absent a showing the award would be unreasonable, for
> example, because "the lawyer did not customarily charge clients for travel
> time, or . . . did not have other work that could have been done during that
> time had he not been traveling," <u>Rose Confections, Inc. v. Ambrosia
> Chocolate Co.</u>, 816 F.2d 381, 396 (8th Cir.1987).

<u>Ludlow v. BNSF Ry. Co.</u>, 788 F.3d 794, 803–04 (8th Cir. 2015) (finding no abuse of discretion in awarding full amount of fees for reasonable travel time). The School District does not argue that R.M.M.'s attorneys do not customarily charge clients for travel time or lacked other work that could have been done had they not been traveling. Accordingly, the Court makes no reduction for travel time.

Regarding fees for expert witnesses, the Supreme Court has held that prevailing parents are not entitled to recover expert fees under the IDEA. <u>Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy</u>, 548 U.S. 291, 301–304 (2006). Accordingly, R.M.M.'s request for reimbursement for such fees is denied. The Court deducts expert fees of $600.00 incurred on August 27, 2014 for R.M.M.'s expert Dr. Ziegler, as well as $600 for expert-related attorney work between April 14, 2015 and July 6, 2015 that appears to be redundant. (<u>See</u> Billing Records, Ex. E to Goetz Aff.)

The School District further seeks a reduction for billing entries concerning attendance at IEP team meetings and resolution session meetings. "A[ ] [resolution session meeting] is a meeting of the IEP team." <u>Damarcus S.</u>, 206 F. Supp. 3d at 470 (citing 20 U.S.C. § 1415(f)(1)(B)(i)). The IDEA provides that "[a]ttorneys' fees may not

be awarded relating to any meeting of the IEP Team unless such meeting is convened as a result of an administrative proceeding or judicial action, or at the discretion of the State, for a mediation described [in the statute]." 20 U.S.C. § 1415(i)(3)(ii).  In addition, fees are not recoverable for preliminary resolution meetings, held prior to impartial due process hearings, as they are not considered administrative hearings or judicial actions.  Id. § 1415(i)(3)(iii).  There is no evidence here showing that the fees incurred on September 18, 2014, October 21, 2014, and April 5, 2016 for preparing and attending resolution session meetings were convened as a result of an administrative proceeding or judicial action.  The Court therefore reduces fees in the amount of $1,350.00.

Finally, R.M.M. further seeks reimbursement of $400 in filing costs and related expenses.  (See Pls.' Mem. at 23.)   This award is granted.

### C.    Interest

R.M.M. also seeks pre- and post-judgment interest on any award of attorneys' fees. (See id.; Pls.' Mot. at 2.)  The IDEA is silent regarding whether interest may be awarded on an attorneys' fee award.  Instead, it states that ". . . the court, in its discretion, may award reasonable attorneys' fees as part of the costs [to a prevailing party]."  20 U.S.C. § 1415(i)(3)(B).  R.M.M. does not cite authority for the proposition that interest on an attorneys' fee award under the IDEA is a permitted cost, nor does R.M.M. provide an estimate or methodology for calculating such interest.  The Court therefore declines to award interest.

**THEREFORE, IT IS HEREBY ORDERED THAT:**

1.    The Motion for Attorney Fees and Costs filed by R.M.M. [Doc. No. 107]

**GRANTED in part** and **DENIED in part**; and

2.    The Court awards attorneys' fees in the amount of $266,003.28, and costs in

the amount of $400, for a total award of $266,403.28.


Dated:   December 15, 2017

s/Susan Richard Nelson
SUSAN RICHARD NELSON
United States District Court Judge

20